**MARC P. BERGER**
**REGIONAL DIRECTOR**
**Lara S. Mehraban**
**Thomas P. Smith, Jr.**
**Dugan Bliss**
**Kristine M. Zaleskas**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**212-336-0971 (Bliss)**
**blissd@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | **20 Civ. 3729** |
| -against- | |
| **APPLIED BIOSCIENCES CORP.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Applied BioSciences Corp. ("APPB"), alleges as follows:

## SUMMARY

1.      Seeking to exploit the COVID-19 pandemic for profit, microcap company APPB dramatically shifted its focus in late March 2020 from cannabinoid-based products to pandemic-related products. On March 25, 2020, as news about the COVID-19 pandemic dominated the public's attention, APPB announced that it had pivoted its manufacturing resources to build products that would help battle the spread of COVID-19, including hand sanitizer. Then, on

March 31, 2020, APPB issued a materially misleading press release in which it falsely claimed to be offering and shipping a COVID-19 home test kit to the general public for private use.

2.     Specifically, APPB announced in a headline to a press release that it had begun "Offering Coronavirus Test Kit to the General Public to Combat Spread of COVID-19," that the company had begun shipping a line of "Home Test Kits" to "be used for Homes . . . or anyone wanting immediate and private results" and touted results in under 15 minutes using only a finger prick.  In fact, APPB did not offer or intend to sell the test kit for home or private use by the general public, and it had not begun shipping any test kits.  Instead APPB intended to screen potential purchasers only to allow purchases in connection with use by nursing homes, schools, military, and first responders, in each case in consultation with a medical professional. Additionally, APPB's press release was materially misleading because it failed to disclose that the FDA had not approved or authorized the sale of any COVID-19 at-home test kits.

3.     The false and misleading press release caused APPB's stock price and trading volume to soar.

**VIOLATIONS**

4.     By virtue of the foregoing conduct and as alleged further herein, Defendant APPB has violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5.     Unless Defendant is restrained and enjoined, it will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

6.     The Commission brings this action pursuant to the authority conferred upon it by

Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

7.      The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges it has violated; (b)  ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and (c) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].

9.      Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10.     Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.  Notably, APPB is headquartered in this District, a member of APPB's board of directors works for APPB in this District, and APPB offered its products and securities for sale in this District.

## DEFENDANT

11.     **APPB**, incorporated in 2014 in Nevada, has its principal place of business in New York, NY.  Until May 1, 2020, APPB had a class of common stock registered pursuant to Section 12(g) of the Exchange Act.  Until that time, APPB was subject to the reporting obligations found under Section 12(g) of the Exchange Act.  As of its last Form 10-Q, filed on

February 14, 2020, APPB had 14,292,956 shares of common stock outstanding.

## OTHER RELEVANT INDIVIDUALS AND ENTITY

12.     **The Director** is a member of the board of directors of APPB and performs work for APPB in New York, NY.

13.     **Essential Oil Company** is a Nevada corporation with a principal place of business of Beverly Hills, California.  The company's website sells "vitamin essential oil aromatherapy diffuser sticks."  On April 11, 2020, a related entity was incorporated in Nevada. That company's website began offering a COVID-19 test for bulk sales at or before March 2020.

14.     **Essential Oil Executive** is the sole officer of Essential Oil Company.  His background is in acting and modeling.

## FACTS

I.     **BACKGROUND OF APPB**

A.     **APPB's Business and Financial Condition**

15.     APPB's Form 10-K for the year ended March 31, 2019, filed on July 1, 2019, stated that APPB's business focuses "on the development of science-driven Cannabinoid therapeutics/biopharmaceuticals, and delivering high-quality CBD products as well as state -of-the-art testing and analytics capabilities to our customers."

II.     **APPB ISSUED MISLEADING PRESS RELEASES TO EXPLOIT THE COVID-19 PANDEMIC, INCLUDING A MATERIALLY MISLEADING PRESS RELEASE ON MARCH 31, 2020.**

A.     **The March 25, 2020 Press Release**

16.     As consumer demand for products to combat COVID-19 grew, APPB announced a pivot in its business from cannabinoid-related products to pandemic-related products.  First, on March 25, 2020, APPB announced in a press release titled "[APPB] Announces Launch of . . .

Product Line to Combat Spread of COVID-19" that the company had "diverted manufacturing resources to build products that will help battle the spread of the coronavirus (COVID-19)."  The press release included a hyperlink to an APPB-affiliated online store that sold hand sanitizer and other products.   The press release further stated that APPB "has formulated its sanitizing blends according to the CDC guidelines to make them as effective as possible in killing harmful germs and bacteria."

17.     APPB's March 25, 2020 press release was misleading because APPB neither diverted "manufacturing resources" nor "formulated its sanitizing blends" in connection with the hand sanitizer it sold, but rather a third-party manufactured the hand sanitizer sold by APPB.

**B.     The March 31, 2020 Press Release**

18.     On March 31, 2020, APPB announced in a press release titled "[APPB] Begins Offering Coronavirus Test Kit to the General Public to Combat Spread of COVID-19" that the company had "begun shipping" a line of home kits for coronavirus detection, specifically that "further to its recent March 25th, 2020 press release regarding the Company's diversion of production production [sic] capacity to product [sic] hand sanitizer, it has begun shipping Coronavirus Test Kits (the 'Kits' or the 'Tests') in the United States."

19.     The press release stated, with emphasis supplied:

> These Coronavirus Tests Kits are CE certified, accurate, affordable and reliable results in under 15 minutes [sic]. . . .  This is an expansion of products that will help battle the spread of the coronavirus ("COVID-19").
>
> **These CE certified Kits can be used for Homes**, Schools, Hospitals, Law Enforcement, Military, Public Servants **or anyone wanting immediate and private results**.
>
> The **Home Test Kits** can be found on the Company's online store. . . .

20.     The March 31, 2020 press release was reviewed and approved by the Director.

**C.     The Materially Misleading Nature of the March 31, 2020 Press Release**

21.     APPB's March 31, 2020 press release was materially misleading in a number of ways.  First, by stating that "further to its recent March 25th, 2020 press release regarding the Company's diversion of production production [sic] capacity to product [sic] hand sanitizer, it has begun shipping Coronavirus Test Kits[,]" APPB misled the public by implying that APPB had some role in the production of the test kits.  In fact, APPB had simply entered into an agreement to purchase test kits from the Essential Oil Company, a company that prior to the COVID-19 pandemic sold "vitamin essential oil aromatherapy diffuser sticks[,]" and whose sole officer has a background in acting and modeling.  The Essential Oil Company in turn sourced the test kits from a manufacturer in China.  APPB knew or was reckless in not knowing these material facts, yet it misrepresented or did not disclose them.

22.     Second, the March 31, 2020 press release claimed that it had "begun shipping" the test kits, which were "Home Test Kits" offered to the "General Public" and that "can be used for Homes . . . or anyone wanting immediate and private results."  In fact, APPB had not begun shipping the test kits and now claims it did not offer, sell or intend to sell the test kit for home or private use, but rather APPB intended to screen potential purchasers only to allow purchases in connection with use by nursing homes, schools, military, first responders, or in consultation with a medical professional.  APPB knew or was reckless in not knowing these material facts, yet it misrepresented or did not disclose them.

23.     Third, APPB's March 31, 2020 press release misleadingly failed to disclose that the FDA had not approved or authorized the sale of any at-home test kits, despite the fact that APPB knew that the test kits were subject to FDA review.  Just days earlier, the FDA announced

on its website on March 20, 2020 that no home-based coronavirus tests had been approved

(emphasis supplied):

> [T]he agency is beginning to see unauthorized fraudulent test kits
> that are being marketed to test for COVID-19 in the home.
> **We want to alert the American public that, at this time, the**
> **FDA has not authorized any test that is available to purchase**
> **for testing yourself at home for COVID-19.** The FDA sees the
> public health value in expanding the availability of COVID-19
> testing through safe and accurate tests that may include home
> collection, and we are actively working with test developers in this
> space.

24.     In a "Consumer Update" included in a March 24, 2020 "Coronavirus (COVID-19)

Update," the FDA further emphasized that no home-based coronavirus tests have been

authorized, in a release entitled "Beware of Fraudulent Coronavirus Tests, Vaccines and

Treatments" (emphasis supplied):

> The FDA has also seen unauthorized fraudulent test kits for
> COVID-19 being sold online. Currently, the only way to be tested
> for COVID-19 is to talk to your health care provider.
> **At this time, the FDA has not authorized any COVID-19 test to**
> **be completely used and processed at home.** The FDA has
> authorized the first COVID-19 test for home collection of samples,
> but those samples are to be sent to a laboratory for processing and
> test reporting.

25.     The FDA also posted a list of all approved coronavirus-related in vitro

(laboratory) test kits on its website, including the manufacturer or laboratory that produced the

test.   That list did not include APPB or the test kit it offered to sell, because the test kit was not

authorized by the FDA, which APPB also failed to disclose in its press release.

26.     APPB knew or was reckless in not knowing that it was offering to sell a test kit

that was subject to FDA review but that had not been approved by the FDA for home use, yet

APPB did not disclose that material fact.  APPB has explained that prior to the March 31, 2020

press release, the Essential Oil Company Executive told the Director that the test kit offered by

APPB was approved by the FDA.  However, APPB conceded that it performed no further diligence to confirm whether the test kit had been approved by the FDA.  Even a minimal amount of diligence by APPB would have revealed that the test kit was not approved by the FDA.

### D.    The April 24 and 27, 2020 Press Releases

27.    On April 24, 2020, APPB issued a press release announcing that it had terminated its agreement with its COVID-19 test supplier, the Essential Oil Company.  The release further stated that:

> while at the time of publication of the March 31, 2020 press release, the [FDA] did not disallow use of the test kit for home use without the administration of the test by a qualified medical professional, subsequent to publication of the March 31, 2020 press release, by April 1, 2020, the FDA notified the supplier of the test kit that home use of the test kit by a qualified medical professional was not allowed.

28.    While the April 24, 2020 press release attempted to correct the March 31, 2020 press release, that correction itself was misleading because the COVID-19 test kit offered for sale by APPB was never authorized for home use, with or without the administration by a qualified medical professional.

29.    The April 24, 2020 press release also stated that "[o]n April 1, 2020, immediately after the supplier of the test kit notified the Company that the FDA had informed it that the test kit was not allowed for home use, the Company supplemented its March 31, 2020 press release to remove reference to home use."  That statement was misleading because the company never "supplemented its March 31, 2020 press release."  In fact, on April 27, 2020, APPB issued a press release to correct that misstatement, stating that it "should have stated that the Company revised its website (not supplemented the March 31, 2020 press release). . . ."

### III.    APPB'S STOCK PRICE AFTER THE MARCH 31, 2010 PRESS RELEASE AND SUBSEQUENT TRADING SUSPENSION

30.     After the materially misleading March 31, 2020 press release, APPB's price and volume both increased notably.  The press release was issued before the market opened on March 31.  During trading on March 31, APPB's stock price increased almost 80 percent from the previous day (from $0.45 to $0.80), and its volume increased by a factor of 85 (136,300 shares sold, versus 1600 shares sold on the previous day).  From March 31, 2020 through April 7, 2020, APPB's closing stock price ranged from $0.45 to $0.80, with an average trading volume of 48,985 shares.  In contrast, from January 2, 2020 through March 30, 2020, APPB's closing stock price ranged from $0.24 to $0.69, with an average trading volume of 3,635 shares.

31.     On April 13, 2020, the Commission suspended trading in APPB's securities for ten trading days, effective April 14, 2020.

### CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

32.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 31.

33.     Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

34.    By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining APPB and its agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. §§ 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. §§ 240.10b-5(b)];

### II.

Ordering Defendant to pay civil monetary penalties under Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and

### III.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
       May 14, 2020

<u>s/Marc P. Berger</u>

MARC P. BERGER
REGIONAL DIRECTOR
Lara S. Mehraban
Thomas P. Smith, Jr.
Dugan Bliss
Kristine M. Zaleskas
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
212-336-0971 (Bliss)
blissd@sec.gov